## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATHANIEL JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV 18-388-RAW-SPS |
| | ) | |
| MIKE CARPENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at OSP. The defendant is former OSP Warden Mike Carpenter. The Court has before it for consideration Plaintiff's second amended complaint (Dkt. 22); a special report prepared by the DOC at the direction of the Court (Dkt. 29), in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); Defendant's motion to dismiss (Dkt. 30); and Plaintiff's objection to the special report and motion to dismiss (Dkt. 35).

**Plaintiff's Allegations**

Plaintiff alleges he has been discriminated against and wrongfully held in the OSP maximum security unit for more than 30 years without justification. He also asserts he is a bisexual prisoner who should not be housed in maximum security because of increasing violence from gangs and other harsh conditions of confinement. He contends he has suffered "endless sexual discrimination, employment discrimination, transfer discrimination, [and] living discrimination," in violation of the Constitution. Further, his assignment to maximum security has resulted in mental anguish and scars on his wrists and ankles from restraints. He

further alleges that despite his classification as a minimum security prisoner and his unit team's transfer recommendations, the upper administrative staff have given no reason for his continued placement in maximum security. (Dkt. 22 at 4-5). He is seeking compensatory and punitive damages, as well as placement in a lower security prison population.

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint also must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905

2

F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555.  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  With these standards in mind, the court turns to the merits of Defendant's motion.

**Exhaustion of Administrative Remedies**

Defendant alleges, among other things, that Plaintiff  has failed to exhaust the administrative remedies for any of his claims.  Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A plaintiff must exhaust administrative remedies before seeking injunctive relief, "just as he is required to do before seeking other remedies covered by the PLRA."  *Nellson v. Barnhart*, 454 F. Supp. 1087, 1092 (D. Colo. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).  In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties.  *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

**Discussion**

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident.  If that is unsuccessful, he may submit a Request to Staff (RTS) to the

3

appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form.  If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the reviewing authority, asserting only the issue of the lack of response to the RTS.  If the complaint is not resolved after the response to the RTS, the offender then may file a grievance, attaching the RTS with the response from the staff member.  If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA), personal identity ARA, or Medical ARA, whichever is appropriate, within 15 days of receipt of the reviewing authority's decision or any amended decision.  The administrative process is exhausted only after all of these steps have been taken.  (Dkt. 29-13 at 7-16).

The record shows that on September 10, 2018, Plaintiff submitted RTS No. 18-2386 to his Unit Manager, requesting a transfer to a lower security facility.  He claimed he was a minimum security prisoner who should not be subjected to maximum security conditions without justification.  On September 12, 2018, OSP staff responded to the RTS and advised that he would receive "single cell status," which Defendant asserts meant he would be in an isolated cell to reduce the risk of harm.  (Dkt. 29-14 at 8-9; Dkt. 30 at 15).

On September 21, 2018, Plaintiff filed Grievance No. OSP-18-166 (Dkt. 20-14 at 6-7). On October 19, 2018, he received the facility reviewing authority's response to his grievance.  *Id*. at 5.  The response cited the section of the Male Custody Assessment Procedures, OP-060103(M), which states that "the decision as to where to place an inmate is totally discretionary."  *Id*.  On November 8, 2018, Plaintiff appealed the grievance response to the ARA.  *Id*. at 3.  On November 26, 2018, Plaintiff's appeal was returned unanswered because it was submitted out of time. *Id.* at 2.  Plaintiff made no further attempts to appeal this grievance.

4

On December 9, 2018, Plaintiff submitted RTS No. 18-3252, asking that Deputy Warden Cooper transfer him to an OSP medium security unit. On January 9, 2019, a staff member informed Plaintiff that his transfer packet had been completed and denied (Dkt. 22 at 22). On January 28, 2019, Plaintiff received an additional response, advising him that a new transfer packet is submitted annually and that he would have one submitted in March 2019. *Id*. at 23.

On March 31, 2019, Plaintiff submitted RTS No. 19-885, inquiring about the status of his transfer packet that was due in March 2019. He sent this request as a follow-up to the response to RTS No. 18-3252. Plaintiff specifically asked to be transferred to a lower security area so he could get a job. On April 16, 2019, Plaintiff was advised that his transfer packet was being considered, and he was on the facility job waiting list. *Id.* at 24. There is no record of a further appeal.

Plaintiff alleges in his objection (Dkt. 35) to the special report and the motion to dismiss that he had been moved to the medium security section of OSP, pending a transfer to another facility. He requested an extension of time to see the outcome of the transfer packet and to further research the constitutional violations. He, however, does not address the issue of the exhaustion of his administrative remedies. The Court, therefore, finds an extension to further address the issues in his second amended complaint is not warranted.

After careful review, the Court finds that Plaintiff has failed to exhaust the administrative remedies for his claims. Therefore, Defendant's motion to dismiss (Dkt. 30) must be GRANTED, pursuant to Fed. R. Civ. P. 12(b)(6).

**ACCORDINGLY,** Defendant's motion to dismiss (Dkt. 30) is GRANTED for Plaintiff's failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 17th day of June 2021.

_____
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE